| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x<br>Seneca Ins. Co.,<br><br>                Plaintiff<br><br>     v.<br><br><br>Brent Wilcock and Secure Southwest<br>Brokerage, Ltd.,<br><br>                Defendants<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | 01 Civ. 7620 (WHP)(MHD)<br><br><br><br><br><br><br>**Plaintiff's Memorandum of Law In Support of its Motion to File a <u>Second Amended Complaint.</u>** |

### Preliminary Statement

Plaintiff filed its Complaint in this action on August 13, 2001.  After motion practice, plaintiff filed its Amended Complaint in this action in June 2002.  Subsequent document discovery and depositions have revealed and confirmed a number of improper financial practices of defendants.

Since discovery it is clear that defendants engaged in these practices at least as long ago as late 1993, when defendants approached Seneca to create a program of day care insurance. From the very first contact defendants concealed these practices from Seneca.  Seneca would not have entered into any business relationship with defendants if it had known of the practices in 1993.  If Seneca had learned of the practices at any time before the relationship ended on February 28, 1997, Seneca would immediately have terminated the contract in accordance with the contract's terms.  Wolin Aff't in Support of Motions <u>In Limine</u>, ¶¶ 15-16.

### STATEMENT OF FACTS

A summary of the relevant facts appears in the Memorandum and Order in this action dated May 24, 2002 (Hon. Wm. H. Pauley, USDJ.); in plaintiff's Memo. in Opposition to Defendants' Motion for Partial Summary Judgment, dated June 18, 2004, at pp. 3-5; and in Plaintiff's Memo in Support of Plaintiff's Motion for Sanctions upon defendants, filed contemporaneously with this motion.

Plaintiff is a New York property and liability insurer. Defendants are an Arizona insurance agent and his former agency. Amended Complaint ¶¶ 1-3. As of March 1, 1994 the parties created an insurer-agent relationship. Seneca offered liability coverage to the child day care centers within the umbrella coverage of the Arizona Child Care Ass'n ("ACCA"). As a central part of that coverage, defendants maintained a Self-Insured Retention Fund ("SIR Fund") to reimburse Seneca for the first $25,000 of any claim, subject to an annual maximum. Seneca also created a Military Day Care Program for another group of insureds, through defendants.

At the end of the third year of the ACCA program, February 28, 1997, Seneca ceased offering insurance through ACCA. During 1997 defendants stopped reimbursing Seneca from the SIR Fund for the appropriate first portion of claims. Seneca demanded an audit, its right under the parties' contract (Ex. 3; Ex. 1, attachments).

When the audit ended, Seneca's CEO Marc Wolin wrote to defendants on February 10, 1998 setting out Seneca's claims for reimbursement. Ex. 1. Facing the defendants' stonewalling, Seneca finally communicated directly with Employers Reinsurance Co., including a letter of March 10, 1999 (Ex. 46) summarizing Seneca's economic loss, as known at that time.

When ERC also refused to discuss the matter in good faith, Seneca filed a Notice to Arbitrate on April 19, 1999 (Drummond Aff't dated September 30, 2005, ¶ 2, Ex. B). Ultimately

the parties joined issue on Seneca's Petition to Compel Arbitration.  The Supreme Court of New York dismissed the Petition as of April 13, 2001.  Seneca appealed on April 17, four days later.

While the appeal was pending, plaintiff filed this action on August 13, 2001.

On May 16, 2002 the New York state appellate court affirmed the order dismissing the state court suit to compel arbitration.

## ARGUMENT

### THE COURT SHOULD PERMIT PLAINTIFF TO ADD A FINANCIAL NEGLIGENT MISREPRESENTATION CLAIM.

**A.  SSB's Improper Financial Practices.**

In discovery, plaintiff has confirmed many details that demonstrate the breadth of defendants' improper financial practices:

1. Paying SIR Fund claims for one policy year out of moneys collected for different policy years (Ex. 43;  Wilcock 2 Pg: 122 Ln: 9 - Pg: 123 Ln: 4)

2. Commingling of all funds in SSB's general checking account. Wilcock 2 Pg: 98 Ln: 5 – 15.

3. Using all the commingled funds for improper purposes.  Wilcock 2 Pg: 99 Ln: 1-10.  Pg: 174 Ln: 24 - Pg: 175 Ln: 12.

4. Failing to maintain its financial records in a professional manner  (see, e.g., SIR Fund checkbook kept in handwriting Ex. 61, Docs 1,000,453-464;  handwritten note concerning major SIR Fund transaction, Ex. 76).

5. Creating and funding investments and vehicles:

    a. to develop real estate (Wilcock 2 Pg: 97 Ln: 14 – Pg: 99 Ln: 20;   Wilcock 3 Pg: 205 Ln: 20 - Pg: 206 Ln: 6);
    b. to operate a premium finance company (Ex. 65, third page, Doc 2,000,027, ¶¶ 8-9);

      c.  to sell alarm systems with compensation from the SIR Fund itself (Ex. 34, Doc 2,000,485, "While You Were Out" slip); and

      d.  to buy and sell used cars (Wilcock 3 Pg: 196 Ln: 23 - Pg: 197 Ln: 10).

6.     Improperly refunding Military Day Care Program premiums (Ex. 36, Ex. 37).

7.     Failing to process applications in a manner that included known loss information, such as, for example, the prior sexual abuse losses of Kid Express (Amended Complaint ¶¶ 52-62; see, Plaintiff's Memo in Opp to Defts' Motion for Partial Sum. Jud., at 1, and passim).

8.     Providing that the SIR Fund would pay a maximum of $150,000 for a policy year (later amended to $130,000), even though SIR Fund collections only amounted to $110,000 - $115,000 per policy year (Seneca letter setting out SIR Fund amounts collected, Ex. 1).

The Wolin Aff't re Motions in Limine, dated September 30, 2005, shows that Seneca would not have entered into any business relationship with SSB if it had known the truth about the concealed financial practices. Id., ¶¶ 14-16. The foreseeable reliance and resulting damages are clear. The representations were continuing and constant, and plaintiff did not discover them until the very end of 1997. Id., ¶¶ 17-22.

*****

One set of events jumps out of the sorry history of this case, showing a clear example of the negligent financial misrepresentation. In January 1995, Wilcock telephoned to his Seneca contact. He asked for financial changes to provide more profit, and requested changes in the SIR Fund provisions. Seneca's reply, Ex. 24, sets out the conversation and Seneca's response. At around the same time, on January 23, 1995, Wilcock contacted Seneca's CEO, Mr. Douglas Libby, about increasing SSB's Military Day Care Program commissions (Ex. 87, 5th page, SSB letter).

In these contacts, Wilcock did not disclose the real financial practices of SSB. He did not disclose that at that very time, in early 1995, SSB was beginning its program to invest in the

Juniper Place real estate development, using all commingled funds, and ultimately collapsing in disaster.  (Wilcock 2 Pg: 125 Ln: 25 - Pg: 130 Ln: 6.  Wilcock 3 Pg: 206 Ln: 10 – 21.)  He also did not disclose that he wrote a check to lawyer Condit relating to the Brace and Ordonez sexual abuse cases on January 25, 1995 (PX 20, Doc 1001221, check # 1187), showing that he knew about those sexual abuse cases.  He did not disclose that he had just engaged in one of the used car buy-sell transactions on February 9, 1995 (Ex. 301, not provided because of bulk;  Doc 18,000,040 – 047, attached to Drummond Aff't as Ex. 3).

**2.  Plaintiff Satisfies the Standards of F.R.C.P. Rule 15.**

A motion to amend a complaint should be liberally granted.  Fashion Fragrances v. Croddick, 2004 U.S. Dist. LEXIS 8796 (SDNY May 17, 2004).  This Honorable Court should grant plaintiff's motion to add a financial practices negligent misrepresentation cause of action to the complaint.

This amendment will subject the defendants to no prejudice.  Defendants already know their own financial practices, and that defendants concealed them as long as they could.  Plaintiff has repeatedly claimed and demonstrated the foreseeable reliance and materiality that are elements of the new cause of action.  Seneca's damages are the same as Seneca has sought since the filing of the original complaint.

*****

Defendants may contend that this motion has occurred late in this case.  A careful review of the docket reveals that this is not so.  After plaintiff took the deposition of the defendants in June-July 2003, the parties exchanged expert reports and deposed the experts through the very end of 2003.  At that time, two events occurred.  First, defendants finally produced to Seneca

approximately 600 pages of relevant documents never before produced.  The documents had been in a file cabinet located in the personal office of defendant Wilcock.  Second, defendants indicated a willingness to engage in mediation.  That effort occupied the early months of 2004.  It was unsuccessful.

At that time, the parties scheduled for May 18, 2004 a further deposition of defendant Wilcock to address the documents that defendants had just produced.  After the deposition, this Honorable Court scheduled the defendants' motion for partial summary judgment to be filed forthwith.  That motion was briefed and fully submitted on June 29, 2004.  Since then, plaintiff awaited this Honorable Court's resolution of defendants' summary judgment motion, or, in the event, permission to file the present motion to amend.

In any case, the issue of delay really presents the question of prejudice to the defendants.  Here there is none.  In fact defendants' late production of documents, and destruction of evidence, have caused prejudice to plaintiff as it sought to uncover the truth.

*****

The second issue, futility, is whether the new cause of action would survive a Rule 12 (b)(6) motion to dismiss.  Notably, of course, plaintiff does not need to prove, now, that it will prevail on such a claim.  Yet the evidence is very strong.  The elements of a negligent misrepresentation claim – the misrepresentation, foreseeable reliance, materiality, causation and damage – are simple and readily apparent.

### 3.  Modification to Causes of Action Concerning Misuse of Funds.

Plaintiff's [First] Amended Complaint alleged two causes of action for defendants' misappropriation of funds.  Plaintiff amends those causes of action, contending that defendants'

actions were grossly negligent, but did not rise to the level of intentional misappropriation. Plaintiff has modified the Third and Fourth Causes of Action accordingly.

### CONCLUSION

This Honorable Court should allow plaintiff's motion to file a Second Amended Complaint; the Proposed Second Amended Complaint is attached hereto.

Dated: New York, NY
September 30, 2005

>           /s/
> Jeffrey N. Drummond  (JD3182)
> Attorney for plaintiff
> 303 W. 21st St.
> New York, NY  10011
> (212) 352-9861